Annette C. Clark (Bar No. 208216)
aclark@ctsclaw.com
Joshua Stewart (Bar No. 345512)
jstewart@ctsclaw.com
**CALLAHAN, THOMPSON, SHERMAN  
 & CAUDILL, LLP**
350 Tenth Ave., Suite 1000
San Diego, California 92103
Tel: (949) 261-5700
Fax: (949) 261-6060

Attorneys for Petitioner,
**MARK PUNAK**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK PUNAK, an individual,<br><br>Petitioner,<br><br>v.<br><br>THE INDOOR LAB, LLC;<br>PATRICK BLATTNER;<br>CHRISTOPHER BLATTNER;<br>SCOTT BLATTNER;<br>DEEP INSIGHTS SOLUTIONS, INC.;<br>RUSSELL BLATTNER,<br><br>Respondents. | Case No.:  [Case No.]<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER**<br><br>*EXPEDITED HEARING REQUESTED* |

Plaintiff hereby submits the following Memorandum of Points and Authorities in Support of his *Ex Parte* Application for a Temporary Restraining Order.

///

///

///

///

///

///

-1-

**MEMORANDUM OF POINT & AUTHORITIES IN SUPPORT OF PETITIONER'S *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER**

**TABLE OF CONTENTS**

I.   INTRODUCTION ………………………………………………………… 1

II.  STATEMENT OF FACTS ……………………………………………….. 2

    A.   THE PARTIES ……………………………………………….. 2

    B.   BACKGROUND INFORMATION …………………………….. 3

III. ARGUMENT ……………………………………………………………... 5

    A.   TRO STANDARD …………………………………………… 5

    B.   PETITIONER WILL SUFFER IRREPARABLE INJURIES …… 6

    C.   PETITIONER FACES GREATER HARMS THAN THE RESPONDENTS ……………………………………………… 7

    D.   PETITIONER WILL LIKELY SUCEED ON THE MERITS OF HIS CLAIMS ……………………………………………… 8

        1.   Breach of Contract ……………………………………… 8

        2.   Intentional Misrepresentation ……………………………... 9

        3.   Negligent Misrepresentation ……………………………… 10

        4.   Unpaid Wages Under Cal. Lab. Code § 227.3 ……………. 11

        5.   Waiting Time Penalties under Cal. Lab. Code § 203……… 12

        6.   Copyright Infringement …………………………………… 12

        7.   Misappropriation Under the Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426 – 3426.11 …………………… 13

        8.   Misappropriation Under the Defend Trade Secrets Act, 18 U.S.C. §§ 1831 – 1839 ……………………………… 14

    E.   A TRO ADVANCES THE PUBLIC INTEREST ……………….. 15

IV.  CONCLUSION …………………………………………………………… 16

**MEMORANDUM OF POINT & AUTHORITIES IN SUPPORT OF PETITIONER'S *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER**

# TABLE OF AUTHORITIES

**Cases**

*Alaska v. Native Village of Venetie*,
  856 F.2d 1384 (9th Cir. 1988) ................................................................. 6

*Alliance for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ................................................................. 6

*Borman v. Brown*,
  59 Cal. App. 5th 1048 (2021) ................................................................ 10

*Chapman v. Skype Inc.*,
  220 Cal. App. 4th 217 (2013) .................................................................. 9

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) .............................................................................. 12

*Firefighters v. Maldonado*,
  158 Cal.App. 4th 1226 (Cal. Ct. App. 2008) .......................................... 8

*Garcia v. Google. Inc.*,
  786 F.3d 733 (9th Cir. 2015) ................................................................... 6

*Inteliclear, LLC v. ETC Glob. Holdings, Inc.*,
  978 F.3d 653 (9th Cir. 2020) ................................................................. 14

*Lopez, et al. v. Heckler*,
  713 F.2d 1432 (9th Cir. 1988) ............................................................ 6, 7

*Perfect 10. Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ................................................................. 6

*Reno Air Racing Ass'n v. McCord*,
  452 F.3d 1126 (9th Cir. 2006) ................................................................. 5

*Sargent Fletcher, Inc. v. Able Corp.*,
  110 Cal. App. 4th 1658 (2003) .............................................................. 13

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
  240 F.3d 832 (9th Cir. 2001) ................................................................... 5

*Suastez v. Plastic Dress-Up Co.*,
  31 Cal. 3d 774 (1982) ........................................................................... 11

*Winter v. NRDC, Inc.*,
  555 U.S. 74 (2008) .................................................................................. 6

**Statutes**

17 U.S.C. § 501 .................................................................................................... 12

18 U.S.C. § 1839(3)(A) & (B) .............................................................................. 14

18 U.S.C. § 1839(5)(A) ........................................................................................ 14

18 U.S.C. § 1839(5)(B)(i) ..................................................................................... 15

18 U.S.C. § 1839(6)(a) ......................................................................................... 15

Cal. Civ. Code § 1839(b)(2)(A) ........................................................................... 14

Cal. Civ. Code § 3426.1(a) .................................................................................. 13

Cal. Civ. Code § 3426.1(b)(1) ............................................................................. 13

Cal. Civ. Code § 3426.1(b)(2)(A) ........................................................................ 13

Cal. Civ. Code § 3426.1(d)(1) & (2) .................................................................... 13

Cal. Lab. Code § 203 ........................................................................................... 12

Cal. Lab. Code § 227.3 ................................................................................... 11, 12

Civ. Code §§ 3426 - 3426.11 ............................................................................... 13

U.S.C. §§ 1831 - 1839 ......................................................................................... 14

**Rules**

Fed. R. Civ. P. 65 ................................................................................................... 5

Fed. R. Civ. P. Rule 65(b) ..................................................................................... 5

-iii-

**MEMORANDUM OF POINT & AUTHORITIES IN SUPPORT OF PETITIONER'S *EX PARTE*
APPLICATION FOR A TEMPORARY RESTRAINING ORDER**

## I. INTRODUCTION

Petitioner is TIL's former chief technology officer. Before joining the company in January 2022, Petitioner and Respondent Patrick Blattner ("Respondent Blattner")[1] agreed that Petitioner would be compensated with a $220,000 annual salary as well as an equity stake in TIL. Petitioner lived up to his half of the deal and diligently served in his role, but Respondent Blattner, TIL's chief executive officer and 90 percent owner, failed to transfer equity in TIL to Petitioner as their contract requires.

This is a breach of contract that needs urgent intervention. Respondent Blattner and two of his brothers – they are TIL's co-owners – are planning to sell nearly all of TIL to a company owned by their cousin. If the transaction is consummated the acquiring company will obtain most, if not all, of TIL's Intellectual Property and Petitioner will suffer an irreparable injury. More specifically, anything that remains of TIL after the transaction will be worthless because the company's valuable Intellectual Property will be gone. At that point, if Plaintiff were to obtain equitable relief and receive his rightful 9 percent equity stake, it will be meaningless because TIL will be dramatically devalued. Furthermore, Petitioner will not be able to recover damages from TIL since whatever would remain of the company will be devalued and undercapitalized. Petitioner will also likely not be able to recover damages from Respondent Blattner either; the transaction is a family-to-family sale rather than an arm's length transaction, and it is highly likely that Blattner will not have the money to pay the multimillion-dollar judgment that Petitioner will obtain.

Hence, a TRO is needed. Granting this application will not cause any harm to the public or to the Respondents, especially since TIL will be able to continue operating. On balance, the injuries Petitioner faces outweigh the minimal harm the

---

[1] There are four respondents with the last name of "Blattner" in this matter, but the *gravitas* of this case revolves around Respondent Patrick Blattner. For the sake of convenience and in an attempt to avoid confusion, any reference to a "Respondent Blatter" only refers to Respondent Patrick Blattner. References to other Blattner respondents include those respondents' first names.

-1-
**MEMORANDUM OF POINT & AUTHORITIES IN SUPPORT OF PETITIONER'S *EX PARTE*
APPLICATION FOR A TEMPORARY RESTRAINING ORDER**

Respondents may suffer. Given the strength of Petitioner's claims, and the irreparable injuries he will face if the merger is completed, this Court should use its power to stop the looming acquisition and preserve the status quo.

## II. STATEMENT OF FACTS

### A. THE PARTIES

**Petitioner Mark Punak** is the former chief technology officer for TIL. Petitioner was employed at TIL from January 16, 2022 until July 27, 2023. Petitioner is a resident of San Clemente, in the County of Orange, in the State of California.

**Respondent The Indoor Lab, LLC**, is a technology company with its principal place of business in San Juan Capistrano, in the County of Orange, in the State of California. It filed articles of organization with the California Secretary of State on April 13, 2018. On April 12, 2022, TIL incorporated in the State of Delaware. On June 21, 2022, TIL filed a Certificate of Conversion with the State of California Secretary of State.

**Respondent Patrick Blattner** is the founder and chief executive officer of TIL. Upon information and belief, he has a 90 percent equity stake in TIL. Respondent Patrick Blattner is domiciled in Dana Point, in the County of Orange, in the State of California.

**Respondent Christopher Blattner** is a minority owner of TIL, and the brother of Respondents Patrick and Scott Blattner. Respondent Christopher Blattner is domiciled in Minnesota.

**Respondent Scott Blattner** is a minority owner of TIL, and the brother of Respondent Patrick Blattner. Respondent Christopher Blattner is domiciled in Minnesota.

**Respondent Deep Insights Solutions, Inc.**, doing business as Boss AI and Blattner Technologies, is incorporated in the State of Delaware with a principal place of business in Tennessee.

-2-
**MEMORANDUM OF POINT & AUTHORITIES IN SUPPORT OF PETITIONER'S *EX PARTE*
APPLICATION FOR A TEMPORARY RESTRAINING ORDER**

**Respondent Russell Blattner** is the founder and chairman of Blattner Technologies and the co-founder and CEO of Boss AI. He is also the cousin of Respondents Patrick, Christopher, and Scott Blattner. He is domiciled in Tennessee.

### B. BACKGROUND INFORMATION

Petitioner and Respondent Blattner reached a deal. After weeks of negotiations, in early 2022 Respondent Blattner agreed to hire Petitioner as TIL's chief technology officer. In exchange for Petitioner's labor, the Respondent would pay Petitioner a $220,000 annual salary, give three weeks of paid vacation in his first year and four weeks in the second. Petitioner agreed to sign an "Invention Assignment Agreement" to give TIL rights to intellectual property Petitioner created during the tenure of his employment as consideration for obtaining a 7 percent equity vested over four years in monthly increments and a 9 percent total equity stake upon TIL's acquisition by a third party. On January 10, 2022, Petitioner and Respondent signed a contract with these aforementioned terms. *Id.* at Exhibit C. The promise of an equity stake in TIL convinced Petitioner to take the job, and sign over his intellectual property rights to TIL. *Id.* at ¶¶ 8-10.

Respondent Blattner had no intention of ever giving Petitioner equity in TIL, but he also knew from several rounds of contract negotiations that Petitioner would not join the company or assign the rights to his Intellectual Property unless Petitioner received an equity stake because this provision was an item that Petitioner negotiated. *Id.* at Exhibits A and B. Therefore, Respondent Blattner told Petitioner that he would receive equity in TIL in exchange for the assignment of Intellectual Property in order to persuade Petitioner to join TIL. *Id.* at Exhibit C.

Petitioner and Respondent Blattner had previously worked together at another company and they had a long professional relationship. Based on their history and the fact that Blattner provided a written offer that gave Petitioner an equity stake, Petitioner reasonably believed that he was joining TIL and assigning his Intellectual

-3-
**MEMORANDUM OF POINT & AUTHORITIES IN SUPPORT OF PETITIONER'S *EX PARTE*
APPLICATION FOR A TEMPORARY RESTRAINING ORDER**

1  Property as consideration for equity in the company. *Id.* at Exhibits A and C.
2  Respondent's representations convinced Petitioner to join the company and assign his
3  rights, which he would not have done otherwise. *Id.* at ¶¶ 8-13.
4    Petitioner began working for TIL on January 16, 2022, and with his expertise
5  the company's technology improved exponentially. Petitioner personally wrote
6  computer software code that has independent economic value, as evidenced by the
7  fact that TIL sold its clients licenses to use the software code. Additionally, TIL's
8  value exploded from $550,000 to between $112 million and $280 million, once
9  Complainant became Chief Technology Officer. *Id.* at ¶¶ 15-16. This success was due
10 in large part to Petitioner's expertise and work-ethic; for months he worked 12 to 15
11 hour days so that the company's value would increase. *Id*. at ¶ 27
12   Petitioner continued to ask Respondent Blattner about transferring him equity
13 in TIL, as their contract required. Respondent Blattner, however, avoided his
14 obligation. He did, however, acknowledge that Petitioner was entitled to equity in TIL.
15 "As the term sheet for the pre money valuation is now in place and prepping for
16 signature we have four members on the cap table," Respondent Blattner wrote in a
17 February 6, 2022 email. *Id.* at Exhibit D. A "cap table" or "capitalization table" is a
18 document that shows who has an ownership stake in a company, oftentimes a startup.
19 One of the four members Respondent Blattner mentioned by name was Petitioner. The
20 other three were Respondents Patrick Blattner, and his brothers, Respondents Scott
21 and Christopher Blattner. *Id.*
22   Respondent Blattner also began forming a joint venture with his cousin,
23 Respondent Russell Blattner. This new enterprise would involve not only
24 Respondent's equity in TIL, but the intellectual property he created at TIL as well. *Id.*
25 at Exhibit E.

-4-
**MEMORANDUM OF POINT & AUTHORITIES IN SUPPORT OF PETITIONER'S *EX PARTE*
APPLICATION FOR A TEMPORARY RESTRAINING ORDER**

1  In addition, Respondent Blattner was trying to sell TIL to Boss AI and Blattner Technologies, a company that has Respondent Blattner's cousin, Respondent Russell Blattner, as their founder and CEO. *Id.* at ¶¶ 19-25.

Petitioner continued to ask Respondent Blattner to honor their contract but Respondent Blattner continued to refuse to give Respondent any equity in TIL, or proposed that Petitioner accept equity in TIL under terms that were less favorable than those agreed to in the January 10, 2022 contract. *Id.* at Exhibits A and F; and ¶ 21.

Petitioner and Respondent Blattner's working relationship deteriorated and on July 27, 2023, Respondent Blattner fired Petitioner. TIL did not, however, pay Petitioner for all of the vacation time he had accrued during the course of his employment. *Id.* at Exhibit G; and ¶ 25.

Respondent Blattner still has not assigned Petitioner any equity in TIL and the merger of the company with Boss AI and Blattner Technologies is pending, and the Blattner family is rushing to complete the deal so that they can have full control of TIL and leave Petitioner without his rightful share. *Id.* at ¶¶ 22-26.

### III. ARGUMENT

#### A. TRO STANDARD.

Federal Rules of Civil Procedure, Rule 65, gives courts the authority to issue temporary restraining orders and preliminary injunctions. Fed. R. Civ. P. 65(b). The purpose of a temporary restraining order is to preserve the status quo before a preliminary injunction hearing may be held. *See Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1127 (9th Cir. 2006). The standards for a temporary restraining order and a preliminary injunction are the same. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction

is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008); *Garcia v. Google. Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). In addition, the Ninth Circuit employs a "sliding scale" formulation of the preliminary injunction test. Under the sliding scale, an injunction may be issued where *"*the likelihood of success is such that serious questions going to the merits [are] raised and the balance of hardships tips sharply in plaintiff's favor[,]" *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (internal quotation marks and brackets omitted), provided the other elements of the *Winter* test are met. Irreparable harm and the probability of success are "two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Perfect 10. Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007).

In the Ninth Circuit, "the relative hardship to the parties" is the "critical element" in "deciding at which point along the continuum [an injunction] is justified." *Lopez, et al. v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1988) (internal citations omitted). If the balance of hardships clearly tips to the plaintiff, then the plaintiff does not need to show as strong of a likelihood of success on the merits as when the balance of hardships is not as lopsided. *Alaska v. Native Village of Venetie*, 856 F.2d 1384, 1389 (9th Cir. 1988).

### B.     PETITIONER WILL SUFFER IRREPARABLE INJURIES.

Unless this Court issues a TRO to preserve the status quo, Petitioner will suffer irreparable injuries. Respondent Blattner and two of his brothers are poised to sell nearly all TIL to Boss AI and Blattner Technologies, companies owned by their cousin Respondent Russell Blattner. Punak Decl. at ¶¶ 19 to 20. If the deal is completed, then TIL lose its Intellectual Property and will be left with virtually no value. After that point, even if Respondent Blattner eventually conveys equity in TIL to Petitioner, TIL will be so devalued and undercapitalized that it will be meaningless. Because anything

left of TIL will be worthless, Petitioner will have no real means to collect from TIL the multimillion-dollar judgment he will obtain. *Id.* at ¶ 28.

Furthermore, Petitioner is unlikely to recover from Respondent Blattner either. This is a family-to-family sale rather than an arm's length transaction where the sellers are interested in obtaining the highest price possible. A deal of this magnitude would typically take many months to negotiate and finalize. Instead, because Respondent Blattner is selling to family – the sale is being rushed through to avoid Petitioner obtaining the equity he contracted to receive. It is highly unlikely that Respondent Blattner will have the money to pay the judgment that Petitioner will obtain. *Id.* at ¶ 26.

### C. PETITIONER FACES GREATER HARMS THAN THE RESPONDENTS.

The relative hardships of the parties are a crucial element in deciding whether to grant this application. *Lopez*, 713 F.2d at 1435. If the plaintiff's hardships clearly exceed the defendant's, then the plaintiff does not need to show as strong a likelihood of success on the merits of his claim. Native Village of Venetie, 856 F.2d at 1389.

If this TRO is granted, Respondents Blattner and TIL will be able to continue their operations and TIL's customers will not see any hiccups in their operations. Furthermore, because this is a family-to-family transaction, a pause is unlikely to sour a deal. Punak Decl. at ¶ 29. The effect of a TRO on Respondents would be minimal.

In comparison, Petitioner will be left without a meaningful remedy for a blatant breach of contract and other statutory and common law claims. If Petitioner obtains his rightful equity in TIL *after* the transfer occurs, he will have a minority stake in a company that has been stripped of its value and no way to collect a meaningful judgment. *Id.* at 28.

Clearly, the harm Petitioner faces if the TRO is granted is significant compared to the minor inconvenience Respondents would face. Under *Lopez*, this Court should

-7-

consider this disparity between the Parties' injuries as a critical factor when evaluating this application.

### D. PETITIONER WILL LIKELY SUCCEED ON THE MERITS OF HIS CLAIMS.

#### 1. Breach of Contract.

Petitioner is likely to prevail on his breach of contract claim. Under California law, breach of contract requires the plaintiff to prove the following elements: (1) the existence of a contract; (2) plaintiff's performance or excuse for non-performance (3) the defendant's breach, and (4) damages to the plaintiff as a result of the breach. *CDF Firefighters v. Maldonado*, 158 Cal.App. 4th 1226, 70 (Cal. Ct. App. 2008).

Here, Petitioner and Respondent Blattner had a contract. They agreed in writing that Petitioner would work at TIL as the chief technology officer and assign his rights to any Intellectual Property he created while working at TIL. In exchange, TIL would pay Petitioner a $220,000 annual salary and performance-based bonuses. Respondent Blattner would also give Petitioner equity in TIL. Punak Decl. at Exhibit C.

Pursuant to those terms, Petitioner performed under the contract. Petitioner assigned TIL rights to his intellectual property, became TIL's chief technology officer, and worked at TIL from January 16, 2022 until Respondent Blattner fired him on July 27, 2023 – after Petitioner demanded his equity stake. *Id.* at Exhibit G; and ¶ 15 and 30.

Respondent, however, breached the contract. Contrary to its terms, he did not convey to Petitioner any equity in TIL. *Id.* at Exhibit A; and ¶ 22.

As a result of this breach, Petitioner has suffered damages. Specifically, he has not obtained equity in TIL, a company worth hundreds of millions of dollars, as a result of the Intellectual Property he created. *Id.* at ¶¶ 22-24.

### 2. Intentional Misrepresentation.

The essential elements for intentional misrepresentation are (1) a misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) actual and justifiable reliance; and (5) resulting damage. *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 230-31 (2013).

In January 2022, Respondent Blattner agreed to hire Petitioner as TIL's chief technology officer. In exchange for Petitioner's labor and assignment of any Intellectual Property he created while working for TIL, Respondent Blattner agreed to give Petitioner a 7 percent equity stake in TIL vested over four years at monthly increments, and a 9 percent total equity stake upon TIL's acquisition. On January 10, 2022, they signed a contract with these aforementioned terms. Punak Decl. at Exhibit C.

Respondent Blattner, however, had no intention of ever giving Petitioner any equity in TIL as he stated, but he knew from several rounds of contract negotiations that Petitioner would not join the company and assign his Intellectual Property unless he received equity in TIL. *Id.* at Exhibits A and B; ¶ 7. Knowing that equity would be the only incentive that would entice Plaintiff to become TIL's chief technology officer and with knowledge that he would never convey this interest to Petitioner, Respondent Blattner presented a contract to Petitioner, which provided him equity in TIL. *Id.* at Exhibits A through C.

Based on Respondent Blattner's representations, Petitioner agreed to work for TIL. Petitioner would not have agreed to work for TIL without a contractual term to provide him with equity in the company. *Id.* at ¶ 10-12.

Petitioner's reliance on Respondent Blattner's representation was reasonable. Petitioner had a long prior working relationship with Respondent Blattner and based on their rapport, and the fact that Blattner provided a written offer that gave Petitioner an equity stake, Petitioner reasonably believed that Respondent Blatner would give

-9-
**MEMORANDUM OF POINT & AUTHORITIES IN SUPPORT OF PETITIONER'S *EX PARTE*
APPLICATION FOR A TEMPORARY RESTRAINING ORDER**

him equity in TIL. Respondent's representations convinced Petitioner to join the company and assign his Intellectual Property, which he would not have done otherwise. *Id.* at ¶¶ 11-13.

As a result of this breach, Petitioner has suffered damages. Specifically, he has not obtained equity in TIL, a company worth hundreds of millions of dollars. *Id.* at ¶¶ 22-24.

### 3. Negligent Misrepresentation.

In order to prevail under a claim of negligent misrepresentation, a claimant must show (1) misrepresentation of a past or existing material fact; (2) without reasonable ground for believing it to be true (3) with the intent to induce another's reliance on the fact that was misrepresented; (4) justifiable reliance on the misrepresentation and (5) resulting damage. Negligent misrepresentation does not require knowledge of falsity. *Borman v. Brown*, 59 Cal. App. 5th 1048, 1060 (2021).

In January 2022 Respondent Blattner agreed to hire Petitioner as TIL's chief technology officer. In exchange for Petitioner's labor, Respondent Blattner agreed to give Petitioner a 7 percent equity stake in TIL vested over four years, and a 9 percent total equity stake upon TIL's acquisition. On January 10, 2022, they signed a contract with these aforementioned terms. Punak Decl. at Exhibits A and C.

Respondent Blattner, however, had no reasonable basis for believing his representations to be true. As the owner of 90 percent of TIL and with access to the company's financial information, Respondent Blattner knew, at the time the misrepresentation was made whether he could actually give Petitioner equity in TIL as he had stated. Respondent Blattner knew from several rounds of contract negotiations that Petitioner would not work for TIL or assign his Intellectual Property unless he received equity in the company. *Id.* at Exhibits A and B. Respondent Blattner, therefore, presented a contract to Petitioner giving him equity in TIL without reasonable ground to believe it was true, given the status of the company at the time

the contract was signed. Blattner's intent in presenting the contract promising equity was to induce Petitioner's reliance.

Based on Respondent Blattner's representations, Petitioner agreed to work for TIL. Petitioner would not have agreed to work for TIL without a contractual term to provide him with equity in the company. *Id.* at ¶ 10-12.

Petitioner's reliance on Respondent Blattner's representation was reasonable. Petitioner had a long prior working relationship with Respondent Blattner and based on their rapport, and the fact that Blattner provided a written offer that gave Petitioner an equity stake, Petitioner reasonably believed that Respondent Blatner would give him equity in TIL. Respondent's representations convinced Petitioner to join the company and assign his Intellectual Property, which he would not have done otherwise. *Id.* at ¶¶ 11-13.

As a result of this breach, Petitioner has suffered damages. Specifically, he has not obtained equity in TIL, a company worth hundreds of millions of dollars. *Id.* at ¶¶ 22-24.

### 4. Unpaid Wages Under Cal. Lab. Code § 227.3.

Respondents are liable to Petitioner for vacation time he accrued but was not paid upon his termination. "The right to a paid vacation, when offered in an employer's policy or contract of employment, constitutes deferred wages for services rendered. Case law from this state and others, as well as principles of equity and justice, compel the conclusion that a proportionate right to a paid vacation 'vests' as the labor is rendered. Once vested, the right is protected from forfeiture by section 227.3. On termination of employment, therefore, the statute requires that an employee be paid in wages for a pro rata share of his vacation pay." *Suastez v. Plastic Dress-Up Co.*, 31 Cal. 3d 774, 784 (1982).

Here, Petitioner, during the course of his employment with Respondent, earned vacation time that accrued during the course of his employment. Upon the termination

of his employment, however, TIL failed to pay Petitioner the full value of the vacation he earned. Punak Decl. at Exhibit G; and ¶ 25. Therefore, Respondent TIL is liable under California Labor Code section 227.3 for unpaid wages.

### 5. Waiting Time Penalties under Cal. Lab. Code § 203.

Under California law, when an employer discharges an employee, the employer must pay the employee all vested vacation time at the time of discharge. Cal. Lab. Code § 227.3.

Here, at the time of discharge, Petitioner had vested vacation time. Respondent TIL, however, failed to pay Petitioner all of the vacation time that he earned and was vested. Punak Decl. at Exhibit G; and ¶ 25. Therefore, Petitioner is entitled to waiting time penalties.

### 6. Copyright Infringement.

Respondents have violated copyrights that Petitioner holds. "To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); 17 U.S.C. § 501.

Here, Petitioner wrote original computer code and is the holder of the copyright to that trade secret. Punak Decl. at ¶ 16. As consideration for an equity stake in TIL, Petitioner signed an Invention Assignment Agreement. But because of Respondent Blattner's fraudulent inducement and breach of contract, the Invention Assignment Agreement is not enforceable. Therefore, Petitioner remains the legal owner of the computer code.

Respondents Blattner and TIL reproduced Petitioner's computer code and licensed it to TIL's clients without Petitioner's consent. *Id.* at ¶¶ 5, 10 and 16. Therefore, Respondents Blattner and TIL are liable to Petitioner for copyright infringement.

### 7. Misappropriation Under the Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426 - 3426.11.

Under the Uniform Trade Secrets Act ("USTA") a prima facie claim for misappropriation of trade secrets requires the plaintiff to show (1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff. *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1665 (2003).

The term "trade secret" has a broad meaning, but in the context of the facts of this case, it refers to "information, including a formula, … program, … method, technique, or process, that … Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and … Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d)(1) & (2).

"Misappropriation" has two definitions in the context of the facts of this case. It means the acquisition of a trade secret of another by a person who has reason to know that the trade secret was acquired by improper means. (§ 3426.1(b)(1). Misappropriation also means the use of a trade secret of another without express or implied consent by a person who used improper means to acquire knowledge of the trade secret. § 3426.1(b)(2)(A).

The term "improper means" includes misrepresentations. § 3426.1(a).

Here, Petitioner wrote original computer program and is the holder of the copyright to that trade secret. Punak Decl. at ¶ 16. As consideration for an equity stake in TIL, Petitioner signed an Invention Assignment Agreement. But because of Respondent Blattner's fraudulent inducement and breach of contract, the Invention Assignment Agreement is not enforceable. Therefore, Petitioner remains the legal owner of the computer code.

Respondent Blattner misrepresented to Petitioner that Respondent Blattner would give Petitioner equity in TIL in exchange for Petitioner's labor and assigning his trade secrets to TIL. Respondent Blattner knew that he was making a false promise to Petitioner, and that as a result of his false promise he would obtain Petitioner's trade secrets. Because of the misrepresentations Respondent Blattner made to Petitioner, Respondent Blattner fraudulently acquired Petitioner's trade secrets and damaged Petitioner by depriving him of the ability to exploit the trade secrets to his own pecuniary advantage. Punak Decl. at ¶ 16. Therefore, Respondent Blattner is liable for misappropriation under *California Civil Code* section § 1839(b)(2)(A).

### 8. Misappropriation Under the Defend Trade Secrets Act, 18 U.S.C. §§ 1831 - 1839

Under the Defend of Trade Secrets Act "DTSA" a plaintiff must prove: (1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff. *Inteliclear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657-58 (9th Cir. 2020).

The term "trade secret" in the context of the facts of this case, refers to "all forms and types of … scientific, technical, … or engineering information, including patterns, plans, … program devices, formulas, designs,… methods, techniques, processes, procedures, programs, or codes," that "the owner thereof has taken reasonable measures to keep such information secret; and … the information derives independent economic value, actual or potential from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information". 18 U.S.C. § 1839(3)(A) & (B).

"Misappropriation" has two meanings that are relevant for the facts of this case. It means the acquisition of a trade secret of another by a person who has reason to know that the trade secret was acquired by improper means. § 1839(5)(A).

-14-

Misappropriation also means the disclosure or use of a trade secret of another without express or implied consent by a person who used improper means to acquire knowledge of the trade secret. § 1839(5)(B)(i).

The term "improper means" includes misrepresentations. § 1839(6)(a).

Here, Petitioner wrote original computer program and, as such, is the owner of this trade secret. As consideration for an equity stake in TIL, Petitioner signed an Invention Assignment Agreement. Because of Respondent Blattner's fraudulent inducement and breach of contract, the Invention Assignment Agreement is not enforceable. Therefore, Petitioner remains the legal owner of the computer code.

Respondent Blattner misrepresented to Petitioner that Respondent Blattner would give Petitioner equity in TIL in exchange for Petitioner's labor and assigning his trade secrets to TIL. Respondent Blattner knew that he was making a false promise to Petitioner, and that as a result of his false promise he would obtain Petitioner's trade secrets. Because of the misrepresentations Respondent Blattner made to Petitioner, Respondent Blattner improperly acquired Petitioner's trade secrets and damaged Petitioner by depriving him of the ability to exploit the trade secrets to his own pecuniary advantage. Punak Decl. at ¶ 16. Therefore, Respondent Blattner is liable for misappropriation under Section 1839(5)(A).

### E.  A TRO ADVANCES THE PUBLIC INTEREST

Granting this application for a TRO supports the public's interest in an efficient administration of justice and gives Petitioner an opportunity to bring a complaint so that the dispute may be decided on the merits. Furthermore, there will be no harm to the public if this TRO is granted. Many of TIL's customers are stores and airports where the public conducts business, but the TRO will not impact TIL's ability to operate and serve those clients. For these reasons, granting a TRO advances the public interest.

## IV. CONCLUSION

For the reasons set forth above, Petitioner respectfully requests that this Court issue a temporary restraining order enjoining the Respondents from selling, attempting to auction, sell, causing to be sold, merge, or otherwise transfer ownership of TIL or any of TIL's assets including its Intellectual Property.

Respectfully submitted,

DATED: August 18, 2023

**CALLAHAN, THOMPSON, SHERMAN & CAUDILL, LLP**

By: _____
ANNETTE C. CLARK
JOSHUA STEWART
Attorneys for Petitioner,
MARK PUNAK